IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| NUTECH ORCHARD REMOVAL, LLC, a California Limited Liability Company, <br><br>      Plaintiff, <br><br> v. <br><br> DURATECH INDUSTRIES INTERNATIONAL, INC., a North Dakota Corporation, <br><br>      Defendant. | **BRIEF IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY** <br><br> Case No. 3:18-CV-256 |

COMES NOW Plaintiff NuTech Orchard Removal, LLC, by and through its attorneys of record GERMOLUS KNOLL & LEIBEL LLP (Paul C. Germolus, Steven J. Leibel), and respectfully submits this, the Brief in Support of Motion to Exclude Expert Testimony.

1.  Plaintiff NuTech Orchard Removal, LLC ("NuTech") claims that it decided to buy a massive 80,000 lb. horizontal grinder only after explaining to Defendant DuraTech Industries International, Inc. ("DuraTech") its anticipated use of grinding almond trees while moving through the field.  Plaintiff says that Defendant assured them during a sales meeting that a DuraTech 5064T horizontal grinder was able to do the intended job.  However, when the grinding season began, Plaintiff noticed right away that the grinder was underpowered for Almond tree grinding and that the feed was not aggressive enough.  Thereafter, the DuraTech grinder worked for only a few months before it started shaking itself to pieces.  When

NuTech made a warranty claim on the machine, Defendant denied the warranty claim and instead blamed NuTech, claiming that the reason the grinder broke down is because NuTech failed to properly service and operate the grinder.

2.     In response to Defendant's allegations of fault, Plaintiff hired an expert engineer to analyze the grinder.  It was during discovery that Plaintiff learned for the first time that DuraTech had no testing or engineering data for the 5064T.   Plaintiff also discovered that the rotor bearings, which have repeatedly failed on NuTech's 5064T, were not properly specified for the 5064T and that the type of bearing seal used by DuraTech was not proper dusty environments.  Plaintiff also found out in discovery that at the same time NuTech's 5064T grinder was struggling to grind almond trees, DuraTech was exploring building a horizontal grinder for Almond trees—with a bigger engine and a more aggressive feed.  Plaintiff's expert Josh Rogers, P.E. testified that the 5064T has never been engineered by DuraTech and that there is no data to support DuraTech's position that the grinder is fit for its intended purpose.

3.     In this context, for DuraTech to avoid responsibility, a jury essentially has to believe (1) DuraTech never told NuTech the 5064T would be able to grind almond trees while moving through a field, and/or (2) that the 5064T is able to grind almond trees while moving through a field if properly maintained. The first issue is an ordinary question of fact.  However, regarding the second issue, there is no data from any testing or design that would show there was a basis to contend that the 5064T was fit for its intended purpose.  In fact, the 5064T owned by NuTech is the

only one in existence.  This is where Defendant's expert John Thomazin, P.E. comes in.  Mr. Thomazin claims he does not need bothersome things like specifications or duty cycle data or load calculations or historical use life.  Instead, the foundation of Mr. Thomazin's opinions is that DuraTech has built three (3) 5064 horizontal grinders and one (1) 5064T horizontal grinder in the last ten years, and one of them apparently works.  This is not expert testimony to a reasonable engineering probability.

## BACKGROUND

4.     Mr. Thomazin has prepared two (2) expert reports—a "preliminary" report and a supplemental report.  The preliminary report contains a list of "conclusions."  *See* February 12, 2020 Preliminary Engineering Report, pg. 6, attached as Ex. 1.  Two (2) days after this preliminary report was issued, Thomazin inspected two grinders.  One of the grinders is the subject grinder, a 5064T Horizontal Grinder owned by NuTech (the "NuTech grinder").

5.     The NuTech grinder is the fourth of the four grinders manufactured by DuraTech and is the first 5064T horizontal grinder manufactured by DuraTech on Caterpillar tracks.  It is self-propelled.  The other grinder inspected by Thomazin is the protype 5064 horizontal grinder manufactured by DuraTech (the first of the four 5064 grinders manufactured by DuraTech).  This grinder is owned by Castle Farms, a third party.  Thomazin calls the Castle Ranch grinder the "exemplar."  *See* February 28, 2020 Engineering Report, p. 15, attached as Ex. 2.  Following his inspections, Thomazin issued a second report.  Ex. 2.  Thomazin's second report also includes an

"opinions and conclusions" section.  Ex. 2, p. 19.  The second report adds a new section where Thomazin identifies a basis for his opinions.  *See, e.g.* Ex. 2, p. 19.  The basis of Thomazin's opinions includes his observation of the "exemplar" grinder.  *Id.* Thomazin defines an "exemplar" as a machine that is "identical to—to another machine, either in form or function.  And designed—and designed roughly for the same purpose."  *See* Dep. John Thomazin, 85:5-12, attached as Ex. 3.

6.      The "exemplar" is DuraTech's prototype horizontal grinder, which was manufactured in 2010[1].  *See* Ex. 3, 86:15 to 87:12 (total of 4 horizontal grinders manufactured); Doc. 36-1, Dep. Bob Strahm, 50:22-24 (first 5064 manufactured in 2009 or 2010), p. 126 (first horizontal grinder manufactured in 2010); Grinder Checklist attached as Ex. 4 (indicating serial number of "exemplar" is 70-2-10-000**1**)(emphasis added).  DuraTech manufactured a total of four (4) 5064 horizontal grinders: three (3) grinders that were mounted on tires (a "5064") and the NuTech grinder, which was self-propelled and mounted on Caterpillar tracks (a "5064T").  Ex. 3, 86:20-21; Doc. 36-1, 55:22 to 56:5.  At the time it was sold to Castle Ranch in 2017, the exemplar had 1,016.3 hours on it[2].  Photo DTI01641, attached as Ex. 5.  At the time of Thomazin's inspection in 2020, the "exemplar" had approximately 2,700 hours.  Ex 3, 83:10-21.  Thomazin did not know much about the repair history of the exemplar grinder or whether Castle Ranch had to replace the rotor bearings.  Ex. 3,

---

[1] Thomazin testified the exemplar grinder was manufactured in 2014.  Ex. 3, 84:4-9. This is not consistent with DuraTech's records.  Doc. 36-1, Dep. Bob Strahm, 50:22-24; Ex. 4.
[2] Thomazin did not know how many hours were on the exemplar grinder when it was sold to Castle Ranch in March of 2017.  Ex. 3, 84:10-16.

83:10 to 84:3.  In fact, the purported "exemplar" is the only other 5064 grinder that Thomazin inspected.  Thomazin did not know whether DuraTech had engineered the 5064 except for some electrical components.  Ex. 3, 46:22-25, 47:1-17.  He does not know anything about the two remaining 5064 grinders manufactured by DuraTech. Ex. 3, 87:1-12.

7.     Thomazin also admitted that the exemplar 5064 grinder is different than NuTech's 5064T.  The exemplar 5064 is mounted on three axels with wheels and is not self-propelled.  Ex. 3, 85:13-16.  NuTech's 5064T grinder is mounted on Caterpillar tracks and is self-propelled.  Ex. 3, 85:13-16.  This is important because Plaintiff says it purchased the grinder from DuraTech because Plaintiff needed to be able to grind almond trees while moving.  The "exemplar" grinder is unable to grind while moving.  Ex. 3, 85:17-23.

8.     Regarding his inspection, Thomazin did not perform any testing or collect any data other than pictures.  Ex. 2, pg. 15-18.  Instead, he observed the Castle Ranch 5064 on the same day as the NuTech grinder.  *See* Ex. 3, 79:4-10.    When Thomazin arrived at the site where the exemplar was operating, he spoke with the operator.  Ex. 3, 79:11-16.  Thomazin said the operator told Thomazin that he had been grinding for around six (6) hours and that the operator was servicing the exemplar at the time Thomazin arrived.  Ex. 3, 79:20-25, 80:1-14.  Thomazin "assumed" that was a normal day.  Ex. 3, 80:2-14.  Thomazin said that he observed the operator grind 2-3 almond trees during the 1 ½ - 2 hour inspection.  Ex. 3, 81:11 to 82:3.

5

**PLAINTIFF'S OBJECTION TO OPINION TESTIMONY FROM THOMAZIN**

9.     Plaintiff's objection is limited to those opinions by Thomazin that rely upon, as a basis, Thomazin observation of the "exemplar" grinder.  These opinions include the following:

A.     The rotor bearings on the DuraTech 5064T were properly specified by DuraTech and that the installed bearings were fit for operation.  *See* Ex. 2, p. 19; Ex. 3, 84:17 to 85:4 (Thomazin testifying regarding his basis).

B.     The field service loads experienced by the NuTech grinder under any in-service condition, including those by the NuTech application, "had been calculated and/or measured to be understood by DuraTech to support the design of the 5064T horizontal grinder."  *See* Ex. 3, 93:19 to 94:4 (Thomazin relying upon the exemplar grinder to refute this opinion from Plaintiff's expert); 98:6 to 99:2 (Thomazin testifying that DuraTech knew the 5064T could handle almond trees because the exemplar grinder could grind almond trees);

C.     That the second set of rotor bearings would not have failed in the same manner as the original set.  Ex. 3, 102:3-14 (Thomazin relying upon the exemplar machine as well as his opinion regarding the mechanism of failure to dispute the opinion from Josh Rogers that the second set of bearings would have failed in the same manner as the original set).

D.      That the DuraTech 5064T horizontal grinder, with proper operation, care, and maintenance, can exceed 1,760 operational hours.  Ex. 3, 45:14-22.

## STATEMENT OF LAW

10.      The admissibility of opinion testimony is governed by Federal Rule of Evidence 702.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"When considering expert testimony, a district court must ensure that 'all scientific testimony is both reliable and relevant.' " *In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1000 (8th Cir. 2019), *citing Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010)(internal citations omitted).  The inquiry as to the reliability and relevance of the testimony is a flexible one designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *In re Wholesale*, 946 F.3d at 1000, *citing Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).  The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence.  *See Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

7

11.     Regarding reliability, "the proponent of the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Id. citing Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006).  A court should not admit opinion evidence that "is connected to existing data only by the *ipse dixit* of the expert."  *Id. citing Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

12.     In exercising the gatekeeping function under Rule 702, the trial court should first make a "preliminary assessment of whether the reasoning or methodology underlying the [proposed expert] testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue, focusing specifically on the methodology and not the conclusions."  *Id.* at 1000-1001*, citing Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007).  "Under *Daubert*, 'any step that renders the analysis unreliable … renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.' " *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222-23 (10th Cir. 2003) (alteration omitted) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999)); *citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

## ARGUMENTS AND AUTHORITIES

13.     This motion is being filed because Defendant's expert is trying to dress speculation with the veneer of expertise.  To leapfrog a gap in the evidence,

Defendant's expert has turned to a powerful—but wholly unreliable—methodology. Specifically, Thomazin opines that because he observed one (1) working 5064 Horizontal Grinder, engineering principles allow him to assume NuTech 5064T can grind while moving, that it was properly engineered, and that the rotor bearings were properly specified.  If this methodology were valid, aspiring engineers could burn their algebra books and avoid thousands on student loans.  This is the type of unfair methodology that Rule 702 prohibits.

      A.    <u>The "exemplar" grinder is not substantially similar in either form or function</u>.

14.    Generally speaking, an expert's use of exemplars has been evaluated by trial courts based upon the fact the expert is seeking to prove.  If the testing is intended to reconstruct the incident in question (i.e. to show how it happened), substantial similarity of conditions is required.  *See Dunn v. Nexgrill*, 2009 WL 260025, *3 (E.D. Mo. 2009); *Burns v. Ford Motor Co.*, 2008 WL 222711, *3 (W.D. Ark. 2008), *citing McKnight by and through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396 (8th Cir. 1994).  However, if the testing is only intended to demonstrate general scientific principles, there is no requirement of substantial similarity.  *Id.*  In determining which test to apply, "the foundational standard for its admissibility is determined by whether the evidence is closer to simulating the accident or to demonstrating abstract scientific principles.  The closer the experiment gets to simulating the accident, the more similar the conditions of the experiment must be to the accident conditions."  *McKnight*, 36 F.3d at 1402 (internal citations omitted).

15.     In this case, Thomazin did no testing on the "exemplar" except to crawl around the machine and look at it.  He also physically manipulated the hammermill and watched it grind a handful of almond trees. Ex. 3, p.15-18.  To the extent that that an hour or two of observation qualifies as a scientific "test," Thomazin relies upon this "test" to prove that the NuTech 5064T is properly engineered and that the rotor bearings were properly specified:

Q     Okay.  What is the first opinion [of Plaintiff's expert Josh Rogers][ed.] that you disagree with?

A     The first bullet point.

Q     Okay.

A     The first bullet point says, "No evidence was found to support that the field service loads experienced by the subject grinder under any in-service condition, including those by the NuTech application had been calculated and/or measured to be understood by DuraTech to support the design of the 5064T horizontal grinder."  The subject exemplar was out there grinding all the trees approximately 12 miles away and was doing—was handling the job well.  The 5064T, when it left the factory, was in balance.  They also have two other types of track grinders in operation that are grinding as—grinding wood waste as well.  So they have—they have some knowledge and they have some experience that the service loads experienced by their grinders is—fits the—fit is—fits the function of the machine.

Ex. 3, 93:19 to 94:12.  This attempt at using the testing as direct proof requires the proponent to prove the exemplar and the testing is substantial similar.  *Cf. Burns, supra, citing Fusco v. Gen. Motors Corp.*, 11 F.3d 259, fn. 5 (1st Cir. 1993)("Scientific principles, when demonstrated in a fairly abstract way, are quite unlikely to be confused with the events on trial. The more troublesome cases, however, are ones like this one where some principles of some kind may be demonstrated but in a fashion

that looks very much like a recreation of the event that gave rise to the trial.").
However, Thomazin concedes he can only assume that the types of grinding the
exemplar performed and the hours it was operated was similar to the NuTech
grinder.  *See* Ex. 3, 95:18-25.  He also admits he does not know the sales history, the
duty cycle, the maintenance that was performed on the exemplar, or the repairs that
were made on the exemplar.  Ex. 3, 83:10 to 84:3.  In fact, Thomazin testified this
information would not affect his opinion:

> Q     But even if that machine only grinds yard waste, you think it's safe to
>       draw a conclusion that that exemplar 5064, the fact that's still
>       operating, you can draw conclusions about the 5064 subject grinder in
>       this case?
>
> A.    Yes.
>
> Q.    And your opinion would be unaffected by any evidence that the exemplar
>       5064 was not ever used for almond orchard removal?
>
> A.    That would not affect my opinion.  If it was never used, it wouldn't affect
>       my opinion.  The fact that it's grinding all the trees helps.
>
> Q.    Helps what?
>
> A.    It helps -- it helps to draw conclusions between the subject and the
>       exemplar grinder.
>
> Q.    The fact that it's capable of grinding almond trees, that's all you need?
>
> A.    Yes.

Ex. 3, 97:13 to 98:5.

16.     As explained by Josh Rogers, P.E., the differences between a 5064 and
a 5064T, as well as the differences in use and duty, is material to a reliable
engineering analysis.  *See* Affidavit of Josh Rogers, P.E., ¶ 2, attached as Ex. 6.  This

11

is because grinding while moving necessarily puts different loads on the machine due to gravity as well as the jolts and jerks associated with driving on steel tracks on uneven fields. Ex. 6, ¶ 3. It is also because grinding while moving is going to create different dust and debris encounters for the exposed parts, including the rotor bearings. *Id.*

B.    Thomazin's methodology is unreliable and does not assist the jury.

17.    However, even if the Court finds that the 5064 is substantially similar to the track-driven 5064T, Thomazin relies upon a methodology that has no basis in the scientific method. Specifically, Thomazin observed the exemplar 5064 and observed NuTech's 5064T. He has not reviewed any duty cycle testing results or engineering calculations from the design—there is none—and has not performed any independent testing on the exemplar or the 5064T. He did not perform any testing on the loads or forces that are placed upon either hammermill during operation. This lack of proof is important. At its core, Plaintiff's expert will testify that (1) the DuraTech 5064T was not engineered and, as a result, DuraTech did not have a reasonable basis to represent to NuTech that the 5064T was fit for its intended purpose, and (2) that the evidence does not support Defendant's burden of proof on its affirmative defense that the failure of the 5064T was the result of Plaintiff's negligence.

18.    Thomazin cannot rebut these opinions with a superficial observation that one of the four 5064 horizontal grinders DuraTech built was able to grind trees while stationary. In determining the reliability of an expert's opinion, a district court

examines four non-exclusive factors: (1) whether it can (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) the method's general acceptance. *Presley v. Lakewood Engineering & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009), *citing Daubert*, 509 U.S. at 593-94. "A court should not admit opinion evidence that 'is connected to existing data only by the *ipse dixit* of the expert.'" *In re Wholesale Grocery Products Antitrust Litig.*, 946 F.3d at 1000, *citing Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

19.     As explained by Mr. Rogers, the methodology used by Thomazin lacks a basis in established engineering principles for three reasons. First, the exemplar is not substantially similar such that any opinions based upon a comparison is neither fair nor reliable. Ex. 6, ¶¶ 2-3. Second, there was no data or calculations performed by DuraTech during the design or manufacturing or engineering of the 5064 or 5064T. Ex. 6, ¶ 3. Finally, Thomazin did not perform any testing on the 5064 or the 5064T and gave opinions on technical aspects of bearing specifications based upon nothing more than the fact that one grinder was able to grind 2-3 trees. Ex. 6, ¶ 5-8. As such, it should be excluded.

C.     The probative value in the comparison between Castle Ranch's 5064 and NuTech's 5064T is outweighed by its unfairly prejudicial effect.

20.     Finally, Thomazin's opinions fail to satisfy the threshold of F.R.E. 403, which provides for the exclusion of evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence."  The unfairness of this evidence can be demonstrated by reversing the roles of Plaintiff and Defendant, which is an ordinary context for this kind of objection.  In *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322 (8th Cir. 1985), the plaintiff was injured when a tire separated from the rim while the plaintiff was inflating it.  At trial, the plaintiff was allowed to offer evidence of other accidents by reading into evidence a list of 210 separations involving the particular rim at issue. *Hale,* 756 F.2d at 1332.  The Eight Circuit reversed.

> Appellees argue that the other accident evidence was relevant and admissible to show defect because it shows the history of the product and demonstrates that an explosive separation of the RH5° rim occurs under varying conditions. We do not agree. Evidence of prior accidents is admissible only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar.  The district court erred in admitting evidence of all RH5° >> explosive separation accidents and in shifting to Firestone and Budd the burden of showing dissimilarity after the evidence was admitted. Appellees admit that the circumstances of the accidents differ; the only similar circumstance indicated in the record is the explosive separation of the wheel rim. This is an insufficient showing of similarity.

*Id.* (citations omitted).  This is the point.  Anecdotal evidence is powerful because making judgments about people or things based upon prior actions or performance is consistent with the ordinary experience of a lay person.  However, it can also lead to spectacularly wrong conclusions when it is not based upon a valid methodology.

21.    This disconnect is the reason that the Eighth Circuit in *Hale* required showings of circumstances of substantial similarity with respect to the rim.  In this case, permitting Thomazin's testimony would force Plaintiff to admit additional evidence to show that both the two machines and their use are dissimilar to overcome the prejudice created by this superficial comparison.  *Hale*, 756 F.2d at 1332 ("The

14

district court erred in admitting evidence of all RH5° >> explosive separation accidents and in shifting to Firestone and Budd the burden of showing dissimilarity after the evidence was admitted."). This kind of trial within a trial is unfair.

## PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully prays that the Court enter an order excluding testimony of John Thomazin, P.E. that relies upon his observation of a purported "exemplar" 5064 Horizontal Grinder, including his opinions that (1) The rotor bearings on the DuraTech 5064T were properly specified by DuraTech and that the installed bearings were fit for operation. (2) that the field service loads experienced by the NuTech grinder under any in-service condition, including those by the NuTech application, "had been calculated and/or measured to be understood by DuraTech to support the design of the 5064T horizontal grinder." (3) that the second set of rotor bearings would not have failed in the same manner as the original set, and (4) that the DuraTech 5064T horizontal grinder, with proper operation, care, and maintenance, can exceed 1,760 operational hours, and for such other and further relief deemed just and proper under the circumstances.

Respectfully submitted this 19th day of June, 2020.

GERMOLUS KNOLL & LEIBEL LLP

By:*/s/ Steven J. Leibel*
     Paul C. Germolus (ID 05408)
     Steven J. Leibel (ID 07361)
*Attorneys for Plaintiff*
1915 N. Kavaney Dr., Suite 3
P.O. Box 858
Bismarck, ND  58501
Ph: (701) 255-2010
Fax: (701) 255-1980
Emails:     paul@germolusknoll.com
           steve@germolusknoll.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 19, 2020, a true and correct copy of the foregoing Brief and exhibits to same were filed electronically with the Clerk of Court through the Court's Case Management/Electronic Case Files system, which system sends notice of such filing to the following CM/ECF participants: Justin D. Eichmann, D.C. Woody Bradford

By: */s/ Steven J. Leibel*
     Steven J. Leibel