IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| NUTECH ORCHARD REMOVAL, LLC, a California Limited Liability Company,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DURATECH INDUSTRIES INTERNATIONAL, INC., a North Dakota Corporation,<br><br>　　　　Defendant. | **AFFIDAVIT OF JOSHUA C. ROGERS, P.E.**<br><br>Case No. 3:18-CV-256 |

　　　　COMES NOW Joshua C. Rogers, P.E., and hereby swears and affirms that the following is true and correct to the best of his knowledge and belief under penalty of perjury.

　　　　1.　　I am over the age of eighteen (18) and of sound mind. I have been retained by Plaintiff to offer opinion testimony in this case. I have previously provided an affidavit and a report in this case that addresses my qualifications and the information I have reviewed. [Doc. 39-5]. I understand that this affidavit is being submitted as an exhibit to a brief filed by Attorney Leibel to exclude certain aspects of the opinion testimony from John Thomazin, the engineer hired by DuraTech.

　　　　2.　　In Mr. Thomazin's deposition, he defines an exemplar as a machine that is "identical to – to another machine, either in form or function. And designed –

EXHIBIT 6

3:18-CV-256

designed roughly for the same purpose".[1]  The 5064 grinder owned by Castle Farms is not identical to the subject 5064T grinder in form or function and was not designed for the same purpose.

    3.    First, the "exemplar" 5064 is a stationary unit mounted on a typical semitrailer type suspension system, which includes four hydraulic outboard stabilizer legs for stability while grinding.  The subject 5064T, however, is mounted on a dual metal track-driven system that allows the machine to travel along the ground during grinding operations.  This transport feature on the 5064T is a fundamental differentiator between the design of the "exemplar" and the subject machine.  This is due to the fact that allowing the subject 5064T to move along the ground while grinding will necessarily impart dynamic operational loads on the machine that substantially differ from those that would be experienced by the claimed "exemplar" stationary 5064, all other operational conditions being equal.  DuraTech has produced no evidence that they have performed any analysis or testing to determine the in-service loads for either machine when used to grind Almond tree orchard material. DuraTech has produced no analysis or testing that would have determined what effect the operational loads incurred by grinding Almond tree orchard material would have on the performance and durability for either the claimed "exemplar" or subject machines.  It is to be reasonably expected that the subject 5064T track horizontal grinder would have to manage both the operational impact loads and vibrations

---

[1] Deposition testimony of John Thomazin, pg. 85.

imparted during the grinding process itself, and the operational impact loads and vibrations imparted by traversing along uneven, off-road terrain.

4. Compounding the increased operational impact load and vibration demand made on the subject grinder, the 5064T would be exposed to additional dust and debris generated by the track drive system when the grinder was in motion. This dust and debris would be over and above the typical dust and debris that is generated by the grinding operation alone. The additional contamination generated by the subject 5064T's drive system can be an incrementally detriment to the life of the rotor bearings. The seals specified by DuraTech for use with the rotor bearings were inappropriate for use in a dirty and dusty environment, such as for grinding Almond tree orchard material while moving in a field, as warned against by the bearing supplier (Dodge)[2]. No evidence was produced by DuraTech to understand what effect specifying the inappropriate rotor bearing seal would have had on the contamination of the grease, the durability and the required grease cycle of the rotor bearings. DuraTech's lack of understanding of the consequences of improperly specifying the bearing seals is consistent with the confusing, contradictory and multiple grease cycles presented to NuTech at different times by DuraTech and its agents.

5. Additionally, the use life of the Castle Ranch 5064 is substantially different from NuTech's 5064T. Specifically, the use life of the claimed "exemplar" stationary 5064 grinder was never quantified or otherwise understood through analysis or testing. Prior to arriving at Castle Farms with approximately 1,016

---

[2] "Dodge Bearing Engineering Catalog," Baldor [ESi 12.002].

3

engine hours, the grinder was used at trade shows and sales demonstrations, incurring an unknown and potentially modest operational load history. Since arriving at Castle Farms, it has been used approximately 1,734 additional hours at the time of DuraTech's inspection, per Mr. Thomazin's report. In addition, it is not known what percentage of the 1,734 engine hour usage by Castle Farms was specifically for grinding Almond tree orchard material. This field-use information by Castle Farms is necessary to determine if a comparison of these two machines is valid, despite the differences listed above, since the subject 5064T was exclusively used to grind Almond tree orchard material.

6. Mr. Thomazin's methodology of reliance upon anecdotal observation of the 5064 instead of applying recognized engineering principles is also inconsistent with the scientific method. For example, Mr. Thomazin's first opinion in his supplemental report states "DuraTech correctly specified the rotor bearings, and the installed bearings were fit for operation." His basis for this statement is the claimed "exemplar" grinder had operated for 2,750 hours. As discussed above, the fact the 5064 has 2,750 hours cannot be extrapolated to the 5064T because the two machines are not substantially similar in use, design, or operation. It is also fundamentally incorrect. According to the rotor bearing's manufacturer's "Dodge Bearing Engineering Catalog," the very first, and compulsory step in selecting a bearing for a certain application is to calculate the dynamic capacity for the bearing.[3] In order to perform this calculation, several engineering design values are required and would

---

[3] "Dodge Bearing Engineering Catalog", Baldor, pg. B14-15 [ESi 12.002].

have had to have been identified by DuraTech in order to select the proper bearing. These engineering design values include the desired life expectancy (L10) and a defined duty cycle for the application which requires specific values for the machine's expected loads, operational speeds, and percent duration of these loads and speeds per cycle. Based on the available information, none of this data has ever been known to DuraTech regarding the subject grinder's design. As a result, it would not be possible, per the rotor bearing manufacturer's engineering handbook, for DuraTech to properly specify the subject rotor bearings as claimed by Mr. Thomazin.

7.  As another example, on page 4 of his supplemental report, Mr. Thomazin states "with proper operation, care, and maintenance, the endurance of the 5064T can exceed 1,760 operational hours". Neither the file material produced by DuraTech nor Mr. Thomazin's file production provides any basis to support this opinion to a reasonable degree of engineering probability. Detailed data comprising of number of engine hours under common field use conditions with associated loads, utilized in some form of accumulated damage analysis, is an example of the type of information required to inform an estimate of the durability of certain aspects of the subject grinder's design. No such analytical or test data has been produced by DuraTech to demonstrate the ability of DuraTech or Mr. Thomazin to predict the durability of the one-of-a-kind subject 5064T grinder.

8.  As another example, page 5 of his supplemental report, Mr. Thomazin opines that "DuraTech's design process relies on their experience and collective knowledge. Design is an aggregate effort where products are produced using

feedback from sales personnel and the cumulative experience gained from building prior machine models". The first sentence of this statement is consistent with the fact that DuraTech did not put forth any data, design validation testing, or design analysis to determine if this machine was capable of rendering a reasonable service life while grinding Almond tree orchard debris, the very task that DuraTech marketed and sold the machine to NuTech to perform. Since the subject DuraTech Model 5064T Track Horizontal grinder was a one-of-a-kind, first-of-its-kind machine for DuraTech, no sales or field experience in grinding Almond tree orchard debris with a machine "identical" or similar to the subject grinder was available to draw upon. By this statement, Mr. Thomazin is attempting to put a veneer on a design process that lacks any relationship to an engineered design process.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JOSHUA C. ROGERS, P.E.

Subscribed and sworn before me this 18th day of June 2020.

Jane R Szabaga
NOTARY PUBLIC
Mecklenburg County
North Carolina
My Commission Expires   January 28, 2023

_____
Notary Public